Filed 8/23/24  Sigmund v. Darlington Villas Homeowners Assn. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| TERESIJA SIGMUND, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DARLINGTON VILLA HOME OWNERS ASSOCIATION, INC., et al., <br><br> Defendants and Respondents. | B324761 <br><br> (Los Angeles County Super. Ct. No. SC125743) <br><br> ORDER MODIFYING OPINION AND DENYING REHEARING <br><br> NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on August 1, 2024, be modified as follows:

1. On page eight, in the first full paragraph, after the clause ending "mandatory settlement conference the

trial judge had presided over," add the following footnote (and renumber the subsequent footnotes accordingly):

> 2     In her petition for rehearing, plaintiff asserts that the trial court did not rely on its observations from the settlement conference. Plaintiff's assertion is inconsistent with the record.

2. On page sixteen, in the last paragraph, before the sentence beginning "Plaintiff is correct," add the following sentence:

> The trial court's failure to adhere to the terms of the rule, plaintiff concludes, is reversible per se, thereby rendering any balancing of interests irrelevant.

3. On page sixteen, in the sentence beginning "But she is incorrect," add the following footnote after the clause ending "relationship with Rodriguez as it unraveled" (and renumber the subsequent footnotes accordingly):

> 4     Contrary to what plaintiff asserts in her petition for rehearing, we cite to plaintiff's awareness of the deterioration of her relationship with Rodriguez to illustrate that she had actual, advance notice of the breakdown (rather than to impose a duty upon clients to determine when their attorney intends to withdraw).

4. On page seventeen, in the sentence beginning "This is

why the court," add the word "formal" between "requiring a" and "noticed motion," so that the full sentence reads:

> This is why the court in *Marriage of Tara*, *supra*, 99 Cal.App.5th 871 explicitly rejected the argument that failure to strictly comply with the rule of court requiring a formal noticed motion for a trial continuance—rule 3.1332—invalidates an order granting permission to withdraw.

5. On page eighteen, at the end of the first sentence of the last paragraph, ending "underlying its discretionary decision," add the following footnote (and renumber the subsequent footnotes accordingly):

> 5    Plaintiff is wrong when she argues in her petition for rehearing that we improperly based our substantial evidence review on inadmissible evidence—namely, declarations by defense counsel who witnessed the breakdown between plaintiff and Rodriguez.  Although plaintiff objected to these declarations in the new trial proceeding, the trial court overruled those objections and plaintiff did not offer any legal analysis challenging the trial court's rulings in either her opening or reply briefs on appeal.  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [argument is ""'waived'"" if the appellant ""'fails to support it with reasoned argument and citations to authority'""].)

6. On page twenty, after the clause "Fifth and finally," add the following footnote (and renumber the subsequent footnotes accordingly):

> 7   For the first time in her petition for rehearing, plaintiff argues that she was wrongly denied new counsel to represent her during the in camera hearing regarding Rodriguez's withdrawal motion. This argument is waived because it was not raised previously. Further, plaintiff cites no authority for the proposition that she is entitled to hire counsel to represent her in a hearing to assess whether her current counsel's request to withdraw should be granted.

7. On page twenty, in the second sentence of the last paragraph, replace "'whether the lack of representation affected the result,'" with "'if it is reasonably probable that [plaintiff] would have achieved a more favorable result in the absence of the error'" and change the pincite in the citation to *Marriage of Tara* to "at p. 888," so that the full sentence and citation read:

> In assessing prejudice, we ask "if it is reasonably probable that [plaintiff] would have achieved a more favorable result in the absence of the error." (*Marriage of Tara*, *supra*, 99 Cal.App.5th at p. 888; *In re Malcolm D.* (1996) 42 Cal.App.4th 904, 921 (*Malcolm D.*).)

4

8. On page twenty-one, at the end of the first paragraph, after the citation to *Walker v. State Bar* but before the period and closing parentheses, add a semi-colon and "*Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.2d 920, 925 [recognizing a 'constitutional due process guarantee' 'to be represented by retained counsel in civil actions'],'' so that the full citation sentence reads:

   (*Marriage of Tara*, *supra*, 99 Cal.App.5th at pp. 887-888; *Walker v. State Bar* (1989) 49 Cal.3d 1107, 1116 ["no due process right to counsel in civil cases"]; *Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 925 [recognizing a "constitutional due process guarantee" "to be represented by retained counsel in civil actions"].)

9. On page twenty-one, at the end of the first paragraph, after the above-inserted citation, add the following sentence:

   What is more, we have concluded that the trial court had ample basis to find that plaintiff had *actual*, though not formal, advanced notice, so there was no due process violation.

10. On page twenty-one, in the first sentence of the second paragraph, add "that it was reasonably probable" after "her burden of showing," and replace "was reasonably likely to have altered the outcome" with

5

"would have achieved a more favorable result for her," so that the full sentence reads:

> Plaintiff has not carried her burden of showing that it was reasonably probable that having Rodriguez or any other counsel represent her for the remainder of the second phase of trial would have achieved a more favorable result for her.

11. On page twenty-two, in the sentence beginning "On this record," add "otherwise" between "or" and "rendered," so that the full sentence reads:

> On this record, plaintiff has not shown that the absence of counsel and the denial of a continuance made a determinative difference or otherwise rendered the trial fundamentally unfair. (*Malcolm D., supra*, 42 Cal.App.4th at p. 921.)

12. On page twenty-two, in the sentence beginning "In arguing she was prejudiced," add "categories of" between "seven" and "ways," so that the full sentence reads:

> In arguing she was prejudiced, plaintiff lists seven categories of ways in which being self-represented differed from what counsel might have done in representing her during the remainder of the trial.

*        *        *

6

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____

ASHMANN-GERST, Acting P. J.   CHAVEZ, J.   HOFFSTADT, J.

Filed 8/1/24  Sigmund v. Darlington Villas Homeowners Assn. CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| TERESIJA SIGMUND,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>DARLINGTON VILLAS HOMEOWNERS ASSOCIATION, INC., et al.,<br><br>        Defendants and Respondents. | B324761<br><br>(Los Angeles County Super. Ct. No. SC125743) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rafael A. Ongkeko, Judge.  Affirmed.

Bahar Law Office and Sarvenaz Bahar for Plaintiff and Appellant.

Murchison & Cumming, Gina E. Och, Matthew E. Voss; Law Offices of Scott C. Stratman and Marcia E. Cook; Koletsky, Mancini, Feldman & Morrow and Roy A. Koletsky; McGlinchey Stafford and Michelle M. McCliman for Defendants and Respondents.

\*        \*        \*

Midway through a bifurcated civil trial before a jury, the plaintiff's attorney asked to withdraw from representation when the deteriorating relationship with his client completely broke down.  The trial court granted the attorney's request, and denied the plaintiff's request to continue the trial.  The plaintiff represented herself for the remainder of the trial.  The jury ultimately found for the plaintiff on one of her claims but awarded no damages; the jury found for the defendants on her remaining claims.  On appeal, the plaintiff argues that the court erred in allowing her attorney to withdraw without continuing the trial, and that the defendants' counsel committed misconduct.  These claims lack merit, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.      Facts

#### A.      *The condo building and its homeowners association*

Teresija Sigmund (plaintiff) purchased a condominium in a four-unit building in the Brentwood neighborhood of Los Angeles in 2004.  Plaintiff's condo is on the second floor of the building and consists of two sub-units—specifically, a three-bedroom unit and a separate mother-in-law studio unit behind it.

Starting in 2006, Tisha Bennett (Bennett) owned the condo unit next door to plaintiff, but has not resided in the unit since

2

2011.  From 1997 to 2014, Nancy Wortman (Wortman) owned the condo unit beneath Bennett's.

The owners of the four units in the building—including, at various times, plaintiff, Wortman, and Bennett—made up the members of the building's homeowners association, called the Darlington Villas Homeowner's Association, Inc. (the Association).  At times pertinent to this case, Bennett served as president of the Association and Wortman, as treasurer.

### B.    *Plaintiff's unneighborly conduct*

From when she bought her condo in 2004 through the 2022 trial in this case, plaintiff violated numerous provisions of the Association's covenants, conditions, and restrictions (CC&Rs).  She violated the restrictions on subletting by regularly renting out the larger, front unit on Airbnb to multiple renters on a per-night basis like a "modern-day hostel."  She violated the restrictions on maintaining her unit and the common areas by leaving piles of her personal belongings and rubbish in the common areas, hallways, and parking garage; the local fire department cited plaintiff's buildup of debris as a "fire hazard."  She violated the restrictions on cooperation by refusing the Association access to her mother-in-law unit to fix plumbing problems, which led to water leaking into the building's electrical room as well as into the condo unit directly below plaintiff's.  Bennett "fle[d]" her unit in 2011 out of concerns for her "safety" in living next door to plaintiff; she did not ever return to reside there.

### C.    *Plaintiff's nonpayment of Association dues*

In 2010, plaintiff stopped paying her monthly Association dues; she also failed to pay the Association's assessments for maintenance and repairs to the building dating back to 2005.

3

Plaintiff's failure to pay placed a financial strain on the Association given its small membership. When the Association could not meet its obligations such as paying large utility bills, Wortman—as treasurer—used her own personal funds to cover the shortfall and then reimbursed herself by using Association funds to pay for her personal bills, like for Netflix. Wortman tracked these finances using "Microsoft Money" software, and turned those records over to the Association when she moved out of the building in 2014.

## II.    Procedural Background

### A.    *The Association initiates foreclosure proceedings*

In the spring of 2015, the Association initiated a nonjudicial foreclosure proceeding against plaintiff's condo due to her unpaid bills to the Association. As of May 2017, plaintiff owed a total of $58,196.50 in unpaid monthly dues, special assessments, fines for violations of the CC&Rs, and interest.

### B.    *Plaintiff responds with a lawsuit*

Within a year of the Association's initiation of nonjudicial foreclosure, plaintiff in April 2016 sued the Association, Wortman, and Bennett (collectively, defendants).[1] In the operative third amended complaint that plaintiff filed while self-represented, she alleged claims for (1) breach of the CC&Rs, (2) breach of fiduciary duty, (3) civil extortion, (4) intentional

---

1    Plaintiff later added S.B.S. Lien Services—the collection agency in the foreclosure—as a defendant, but it did not participate in the case because it filed a notice of nonmonetary status.

Bennett cross-complained against plaintiff for indemnity, but later voluntarily dismissed her cross-complaint.

infliction of emotional distress, (5) negligence, (6) injunctive relief, (7) declaratory relief, (8) accounting, (9) private nuisance, and (10) conversion.  By and large, these claims rested on assertions plaintiff had never mentioned prior to the litigation— namely, that (1) *her* condo unit had been experiencing water damage since 2006, when the Association repaired part of the roof but not the part above her unit; (2) access to her unit was impermissibly blocked by a security door Bennett had installed to protect herself from the nightly influx of plaintiff's renters who often caused altercations that necessitated police intervention; and (3) Wortman had misappropriated Association funds for her own benefit.  Plaintiff also asserted that the Association's nonjudicial foreclosure proceeding was "illegal" and "retaliatory" because it was filed in response to her criticisms of Bennett and Wortman's improper management of the Association.

C.     ***The parties settle the nonjudicial foreclosure proceeding***

A trustee's sale of plaintiff's condo was set for October 17, 2016.  Although the trial court initially granted plaintiff's ex parte application for a temporary restraining order to stop the sale, the court subsequently issued a tentative ruling in August 2017 indicating an intent to deny a preliminary injunction because most of plaintiff's arguments were "unsupported by adequate evidence or legal authority."

On the same day the tentative ruling was issued, the Association and plaintiff—who at that point was represented by counsel—signed a settlement agreement to resolve "the assessments, fines, late charges and interest" that the Association had issued "through and including August 2017" (the foreclosure settlement).  Under the foreclosure settlement, the

5

Association agreed "not [to] proceed with foreclosure," while plaintiff agreed to pay a reduced amount of $31,525 in a payment plan.  Except as to the amount plaintiff "owed through an[d] including August 2017," she did not waive "any other claims" against the Association.  The foreclosure settlement was filed with the trial court and expressly provided that it is "enforceable pursuant to" Code of Civil Procedure section 664.6.

**D.** ***Plaintiff's attorney-client relationship deteriorates as trial approaches***

As the trial date approached, plaintiff was represented by attorney Steven Rodriguez (Rodriguez).  He had substituted in to represent her in May 2021.  Rodriguez was plaintiff's third lawyer in the case.  Her first lawyer had represented her from April 2016 through February 2018; her second lawyer had represented her on a "limited basis" from February 2018 through April 2019; and plaintiff represented herself during "long stretches" in between, during which periods she handled depositions, filed motions, and filed pleadings.

In the weeks leading up to the trial, the parties held several final status conferences before the trial court.  At those conferences, numerous "attorney/client issues" between Rodriguez and plaintiff came to light as Rodriguez "report[ed] generalized descriptions" of his disputes with plaintiff.  Those disputes "escalated" as the trial date neared.  At one point, Rodriguez shared that plaintiff "went sideways" during a case strategy discussion and that he might need "to seek to withdraw."  At another point, Rodriguez relayed that he had sought outside legal advice regarding his professional duties due to the issues with plaintiff.  Rodriguez nevertheless endeavored to continue

6

the representation, "inform[ing] courtroom staff" on January 18, 2022 that he was not "substituting out of the case."

### E. *The parties proceed to trial*

The parties proceeded to a jury trial in February 2022 that was bifurcated into two phases.

#### 1. *Phase 1*

The first phase was limited to asking the jury whether the damage arising from the partial roof repair in 2006 was outside the statute of limitations, or whether the defective repair constituted a continuing nuisance that was still actionable.

After four days of trial, the jury found that plaintiff did not prove a continuing nuisance.

#### 2. *Phase 2*

The second phase built on the first phase, asking the jury whether plaintiff proved that any of her remaining claims caused her damage within the pertinent statute-of-limitations window (that is, in or after 2013). Due to numerous pretrial and midtrial rulings, the only claims submitted to the jury were her claims for breach of fiduciary duty, intentional infliction of emotional distress, and private nuisance; plaintiff's remaining equitable claims for injunctive relief, declaratory relief, and an accounting were not submitted to the jury.

##### a. Withdrawal of counsel with no continuance

Following opening statements as well as the testimony of plaintiff and another witness, Rodriguez asked plaintiff to sign a form consenting to his withdrawal as her attorney, and she refused to sign it. Rodriguez then made an oral motion to the trial court seeking to be relieved as counsel due to "a significant conflict of interest." Rodriguez divulged that he now avoided

7

being alone with plaintiff without another person present because he feared plaintiff would falsely accuse him of physically attacking her. Rodrigeuz also reported that plaintiff's "question[ing]" of his "ability to represent her" and of his "competence" had become a "festering issue." In response, plaintiff urged that she "be made co-counsel" so she could "put evidence on" that Rodriguez was not "letting" her present.

The court cleared the courtroom for an in camera hearing. At that hearing, Rodriguez and plaintiff "[went] at it." On the basis of its observations, including those made during a mandatory settlement conference the trial judge had presided over, the court found there was good cause to allow Rodriguez to withdraw as counsel. The court then adjourned trial for that day at 2:15 p.m. to allow plaintiff to secure substitute counsel.

None of the attorneys plaintiff contacted that afternoon agreed to represent her, and plaintiff represented herself for the balance of the second phase of trial. Plaintiff made at least four additional oral requests for a continuance throughout the second phase of the trial, each of which the trial court denied. At no point did plaintiff ask for a mistrial or ask the court to excuse the jury and start anew.

b. Jury verdict

After six days of trial in the second phase, the jury returned a special verdict finding that (1) the Association had breached a fiduciary duty to plaintiff but that breach did not cause any damage, and (2) plaintiff had not established any elements of her remaining two claims.

After entertaining argument from the parties, the trial court subsequently found plaintiff's equitable claims "moot"

8

because they were "necessarily determined" and rejected "in the jury trial."

**F.** *New trial motion*

Plaintiff—represented by her fourth attorney—moved for a new trial based on two alleged irregularities in the proceedings: (1) the trial court's grant of Rodrigeuz's motion to withdraw as counsel without a continuance, and (2) misconduct by defendants' counsel during the trial.

After further briefing, the trial court issued an order on October 14, 2022 denying plaintiff's new trial motion.

On the issue of the withdrawal of counsel without a continuance, the court explained that it would "not have approved" Rodriguez's "exit from the case" if the court believed plaintiff would have been denied a "fair trial," but "all the circumstances"—including that the withdrawal request came as no "surprise"—supported the court's "discretionary decision" that Rodriguez "could not continue as [plaintiff's] trial counsel." The court's denial of a continuance was based on the court's "balance" of its "assessment of [plaintiff's] ability to proceed" given her "unique," "hands-on, comprehensive knowledge" of the case against the "critical issues" of securing a jury during the pandemic, the ongoing second-phase proceedings, and the interests of defendants. "Ultimately," the trial court concluded, granting plaintiff a continuance would not "have changed the outcome" of the jury's verdict because plaintiff was a "very active participant" who "had a clear plan" for prosecuting her case— with which her counsel "strongly disagreed."

The court "reject[ed]" the misconduct issue as "speculative and unproven."

9

### G. *Appeal*

Judgment was entered for defendants, and plaintiff timely filed this appeal.

### DISCUSSION

Plaintiff levels two categories of attacks on appeal. First, she argues that the trial court erred in permitting Rodriguez to withdraw as her counsel without granting her a continuance. Second, she argues that she is entitled to a new trial because defendants' counsel engaged in misconduct during the trial. Neither of plaintiff's attacks has merit.

## I. Withdrawal of Counsel Without Continuance

### A. *Pertinent law*

#### 1. *Overview*

A litigant's attorney may withdraw from representation either (1) with the client's consent, or (2) by court order "after notice" to the client. (Code Civ. Proc., § 284; *Vann v. Shilleh* (1975) 54 Cal.App.3d 192, 197 (*Vann*) ["The right of counsel to withdraw from pending litigation is not absolute"].) A court deciding whether to grant an attorney's request to withdraw must assess (1) whether there is "good cause" for the attorney to withdraw, and if so, (2) whether withdrawal will result in "prejudicing the client's case" and thereby deny the client a fair hearing. (*Ramirez v. Sturdevant* (1994) 21 Cal.App.4th 904, 915; *Vann*, at p. 197; *Kirsch v. Duryea* (1978) 21 Cal.3d 303, 310; *Hodcarriers, Building & Common Laborers Local Union v. Miller* (1966) 243 Cal.App.2d 391, 395 (*Hodcarriers*); Rules of Prof. Conduct, rule 1.16(d).) A withdrawal lacking good cause constitutes abandonment of the client. (*Ramirez*, at p. 915; *Vann*, at p. 197.)

10

Because trial continuances are "disfavored," a party is entitled to a continuance only if (1) she makes an "affirmative showing of good cause," and (2) the court determines that the balance of "the facts and circumstances"—and the pertinent rule of court enumerates 11 such circumstances—weighs in favor of a continuance. (Cal. Rules of Court, rule 3.1332(a), (c) & (d); *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823 (*Marriage of Falcone*).) Among others, pertinent circumstances include (1) "[t]he proximity of the trial date"; (2) "[w]hether there was any previous continuance, extension of time, or delay of trial due to any party"; (3) "[t]he length of the continuance requested"; (4) "[t]he availability of alternative means to address the problem that gave rise to the motion . . . for a continuance"; (5) "[t]he prejudice that parties or witnesses will suffer as a result of the continuance"; (6) "[t]he court's calendar and the impact of granting a continuance on other pending trials"; (7) "[w]hether the interests of justice are best served by a continuance, by the trial of the matter, or by imposing conditions on the continuance"; and (8) "[a]ny other fact or circumstance relevant to the fair determination of the motion or application." (Cal. Rules of Court, rule 3.1332(d).) In balancing these circumstances, a court should not deny a continuance when doing so "'has the practical effect of denying the applicant a fair hearing.'" (*In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1169.)

The tests for assessing whether to allow counsel to withdraw and whether to grant a continuance are similar in structure because both require a showing of good cause and a balancing of pertinent factors.

   2. *Good cause*

Each test requires a threshold showing of "good cause."

11

"Good cause" to permit a withdrawal of counsel exists when there has been a breakdown in the relationship between attorney and client. (*Estate of Falco* (1987) 188 Cal.App.3d 1004, 1014 (*Falco*); *Aceves v. Superior Court* (1996) 51 Cal.App.4th 584, 591-592 (*Aceves*); *People v. Cohen* (1976) 59 Cal.App.3d 241, 249; *In re Marriage of Tara & Robert D.* (2024) 99 Cal.App.5th 871, 875-876 (*Marriage of Tara*); see Rules of Prof. Conduct, rule 1.16(b)(4) ["a lawyer may withdraw from representing a client if . . . the client by other conduct renders it unreasonably difficult for the lawyer to carry out the representation effectively"]; cf. *Vann*, *supra*, 54 Cal.App.3d at p. 197 [counsel's annoyance at client; not good cause]; *People v. Murphy* (1973) 35 Cal.App.3d 905, 921 [counsel's "personal" "considerations"; not good cause].) A breakdown may be established by the client's admission (*Marriage of Tara*, at pp. 875-876) or by the attorney's representation that such a breakdown exists (*Aceves*, at p. 592). Who is at fault for the breakdown does not matter. (*Marriage of Tara*, at p. 881; *Falco*, at p. 1014.)

"Good cause" to grant a continuance exists, as pertinent here, when "trial counsel" is "unavailab[le]" due to "excusable circumstances." (Cal. Rules of Court, rule 3.1332(c)(3); *Marriage of Tara*, *supra*, 99 Cal.App.5th at p. 881 ["Losing counsel shortly before trial often constitutes good cause for a continuance"].)

3. *Balance of pertinent factors*

The second step of each test calls upon the trial court to balance various factors to assess whether, at the end of the day, the grant of a withdrawal motion or the denial of a continuance motion will end up depriving the client of a fair hearing.

In assessing whether granting a withdrawal motion or denying a continuance will deny a client a fair hearing, courts

12

generally adhere to the maxim that forcing a client to trial without counsel "is not likely to ensure fairness" because it risks that the case will not be tried upon its merits. (*Hernandez v. Superior Court* (2004) 115 Cal.App.4th 1242, 1244; *Au-Yang v. Barton* (1999) 21 Cal.4th 958, 963 ["'[t]he policy of the law is to have every litigated case tried upon its merits'"].) However, this likelihood of unfairness is reduced or eliminated when (1) the client has had "sufficient advance warning" of the attorney's intent to withdraw (*Vann*, *supra*, 54 Cal.App.3d at p. 197), (2) the client wishes to act as her own attorney (*id.* at p. 198), (3) the client has demonstrated an ability to represent herself, or (4) the client seeks only a very short continuance (cf. *Marriage of Tara*, *supra*, 99 Cal.App.5th at p. 874). The fairness consideration is not the *only* consideration, however. Although "efficiency" of trial proceedings "is not an end in itself" (*Hernandez*, at p. 1246; *Weiss v. People ex rel. Dept. of Transportation* (2020) 9 Cal.5th 840, 866 (*Weiss*)), courts must also examine and "weigh[]" the "competing interests" "that would be adversely affected by a delay in the proceedings" (*Marriage of Tara*, at p. 874; *Hernandez*, at pp. 1246-1247).

> 4. *Standard of review*

Because the decision whether to allow counsel to withdraw and to deny a continuance turn chiefly on a balancing of competing factors, we review a trial court's rulings on each for an abuse of discretion.[2] (*Falco*, *supra*, 188 Cal.App.3d at p. 1014

---

[2] To the extent we are reviewing the trial court's denial of plaintiff's new trial motion rather than the court's initial ruling allowing Rodriguez to withdraw and denying plaintiff a continuance, we also review the new trial ruling for an abuse of discretion. (Code Civ. Proc., § 657, subd. (1) [ground for new trial

13

[withdrawal of counsel]; *Marriage of Falcone, supra*, 164 Cal.App.4th at p. 823 [continuances].) A trial court abuses its discretion when its ruling "'exceed[s] the bounds of reason'" (*Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1283 (*Gamet*)) or when it fails to balance the pertinent factors and instead relies on a blanket rule of "no continuances" (*Marriage of Tara, supra*, 99 Cal.App.5th at pp. 874, 881-882; *Vann, supra*, 54 Cal.App.3d at pp. 195, 198-199; *Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1395).

## B. *No error in allowing counsel to withdraw and in denying continuance*

The trial court did not abuse its discretion in finding "good cause" to allow Rodriguez to withdraw as counsel or in implicitly finding "good cause" to grant a continuance. With respect to the withdrawal of counsel, Rodriguez represented that his relationship with plaintiff had become so toxic that he feared plaintiff would falsely accuse him of the crime of assault and battery. This representation alone is sufficient to establish the breakdown of their relationship. (*Aceves, supra*, 51 Cal.App.4th at p. 592.) Further, the court observed Rodriguez and plaintiff "go at it" in court, which further corroborates Rodriguez's representation. With respect to a continuance, the trial court's grant of the withdrawal motion left plaintiff's attorney "unavailab[le]" due to "excusable circumstances"; this constituted "good cause" for a continuance. (Cal. Rules of Court, rule 3.1332(c)(3).)

The trial court also did not abuse its discretion in balancing the pertinent circumstances in coming to the conclusion that

---

includes "any order of the court or abuse of discretion by which either party was prevented from having a fair trial"].)

14

plaintiff would not be denied a fair trial if required to proceed without representation and without a continuance. Implicit in the general maxim that forcing a client to trial without counsel is "not likely to ensure fairness" is that this scenario does not *inevitably* lead to unfairness. Here, the trial court had sufficient basis for concluding it would not in this case. Given the ever-spiraling rancor between plaintiff and Rodriguez on display in the weeks leading up to Rodriguez's motion, plaintiff had "sufficient advance warning" that her relationship with Rodriguez was headed toward a breakdown. (Accord, *Outdoor Services, Inc. v. Pabagold, Inc.* (1986) 185 Cal.App.3d 676, 686 [client's "problems" with counsel provided "ample time to obtain other representation"; upholding denial of continuance].) Although plaintiff maintained that she did not want to represent herself, she consistently insisted that she wanted to share the reins of representation as "co-counsel"—both with Rodriguez and with her potential new counsel; given plaintiff's demonstrated ability to represent herself in the interregnum periods between her prior counsels' representations as well as her insistence during the trial for Rodriguez to elicit certain evidence, the trial court had an ample basis for concluding that requiring plaintiff to proceed without a longer continuance would not deny her a fair trial. (Cf. *Urethane Foam Experts, Inc. v. Latimer* (1995) 31 Cal.App.4th 763, 766-767 (*Urethane*) [client's nonparticipation subjected client to default judgment]; *Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 948 [client is wholly absent from trial].) On the other side of the ledger, this issue arose in the middle of trial when a jury had been empaneled and time-qualified. Continuing the trial beyond the brief continuance the court granted plaintiff would have necessarily resulted in a

15

mistrial, a result plaintiff indicated she did not want. At no point did the trial court articulate that it was adhering to a blanket rule against continuances; because the court considered and weighed a variety of factors—articulated most ably in its new trial motion—the court did not abuse its discretion.

Plaintiff resists this conclusion with a veritable plethora of arguments that we have sorted into five buckets.

First, she argues that the trial court was powerless to grant Rodriguez's motion to withdraw as counsel because Rodriguez's motion was oral rather than on the specified Judicial Council form, because Rodriguez did not give 16-day advance notice for a hearing on the specified Judicial Council form, and because the court's ruling was not set forth on the specified Judicial Council form—all as the Rules of Court required. (Cal. Rules of Court, rule 3.1362.) Plaintiff is correct that the Rules of Court are mandatory. (*Weiss*, *supra*, 9 Cal.5th at p. 864; *In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 524; *Villa v. Superior Court* (1981) 124 Cal.App.3d 1063, 1065.) But she is incorrect that noncompliance with those rules necessarily voids the court's action, at least where—as here—plaintiff had actual advance notice of the breakdown of her relationship with Rodriguez as it unraveled, Rodriguez made his oral motion in plaintiff's presence, and the court issued its oral ruling in plaintiff's presence. (*Steiner*, at p. 524 [noncompliance with rules "'is not reversible error unless prejudice is shown'"]; cf. *Urethane*, *supra*, 31 Cal.App.4th at pp. 766-767 [corporate party not advised it could participate only through attorney, and lost right to participate]; *Lee v. An* (2008) 168 Cal.App.4th 558, 564-565 (*Lee*) [party not given notice of termination sanctions, and such sanctions issued]; *Gamet*, *supra*, 91 Cal.App.4th at pp. 1285-1286

16

[party never notified that its counsel had been relieved as counsel]; *Estate of Buchman* (1954) 123 Cal.App.2d 546, 559 [party never given a hearing before executor was removed].) This is why the court in *Marriage of Tara*, *supra*, 99 Cal.App.5th 871 explicitly rejected the argument that failure to strictly comply with the rule of court requiring a noticed motion for a trial continuance—rule 3.1332—invalidates an order granting permission to withdraw. (*Id.* at p. 879.) That is a correct reading of the law. What is more, we decline to deprive trial courts of any and all discretion to allow counsel to withdraw absent a 16-day noticed motion, as such a rule could require a client to keep working with a lawyer who is emotionally or even physically abusive to that client (or vice versa) during that interim period. Indeed, plaintiff's counsel acknowledged at oral argument that trial courts have some authority to depart from a rule of court's absolute time limits as long as the court accords parties adequate notice, and we have concluded that such adequate, advance notice existed here.

Second, plaintiff argues that there was insufficient evidence of a breakdown, and hence no "good cause" to grant Rodrigeuz's motion to withdraw. Specifically, she argues that (1) she and Rodriguez simply disagreed over trial strategy rather than had a full breakdown in their relationship; (2) the timing of Rodriguez's request to withdraw (when he was having personal issues with his estranged spouse) suggests that his reasons for withdrawing were personal and that he was lying when he reported a breakdown in his relationship with plaintiff; (3) their relationship could not be *that* irreparably damaged if, as the trial court noted, Rodriguez was competently representing plaintiff up until the time he asked to withdraw and they had had some

17

disagreements in the past; (4) the court did not ask plaintiff for her side of the story or further question Rodriguez about the nature of the breakdown; and (5) the court erred in finding Rodriguez to be credible.

By and large, these arguments ask us to reweigh the evidence and reassess credibility, when our task is simply to ask whether substantial evidence supports the trial court's factual findings underlying its discretionary decision. (*Shoen v. Zacarias* (2019) 33 Cal.App.5th 1112, 1118-1119; *In re Caden C.* (2021) 11 Cal.5th 614, 640 (*Caden C.*) [reviewing court may not "'evaluate the credibility of witnesses'"].) At oral argument, plaintiff argued that *Hodcarriers, supra*, 243 Cal.App.2d 391 stood for the proposition that a preexisting conflict between lawyer and client cannot justify a midtrial withdrawal of counsel. *Hodcarriers* does not reach so broadly: It held that denial of a midtrial withdrawal of counsel was not an abuse of the trial court's "wide latitude" because "there was no *new* conflict of interest" at the time of the request to withdraw. (*Id.* at p. 395, italics added.) *Hodcarriers* does not hold that the existence of *any* prior conflict compels the denial of a midtrial request to withdraw. We decline to adopt such a strict rule, particularly where, as here, any preexisting conflict over trial strategy metastasized into a more severe and total breakdown in the attorney-client relationship. In sum, the evidence set forth above amply supports the trial court's finding of a breakdown in the attorney-client relationship, and there is nothing inconsistent with a relationship that was contentious but functional and then crossed a line into one that is dysfunctional and toxic. Also at oral argument, plaintiff argued that *Marriage of Tara, supra*, 99 Cal.App.5th 871 obligates trial courts to question attorneys regarding the factual basis of their

18

withdrawal request, and that the trial court's failure to do so in this case invalidates its order. *Marriage of Tara* does not reach so far. *Marriage of Tara* faulted the trial court for not "inquir[ing] about the length of the continuance . . . being sought," which made it "impossible to perform the required balancing analysis." (*Id.* at p. 874.) Here, plaintiff faults the trial court for not asking Rodriguez more questions about the details of the breakdown between himself and plaintiff. But the absence of additional details did not make it "impossible to perform the required balancing analysis" because the court already had the information it needed—namely, that there was a total breakdown, when it occurred, and why it occurred. Probing questions to elicit further details—aside from risking intrusion into privileged communications—would have been relevant chiefly to assessing Rodriguez's credibility, but, as noted above, precedent allows courts to accept counsel's representation of reasons for a withdrawal. (*Aceves*, *supra*, 51 Cal.App.4th at p. 592.)

Third, plaintiff argues the trial court's good cause finding as to the withdrawal motion was infected by its improper consideration of the interactions it observed between plaintiff and Rodriguez during a pretrial settlement conference. This argument lacks merit. Not only did plaintiff expressly consent to having the same judge preside over the trial who also conducted the settlement conference, but that judge did not at any point refer to or otherwise indicate the use any confidential information—which the parties' stipulation limited to statements relating to liability or settlement—in evaluating the breakdown in the attorney-client relationship or the fairness of requiring plaintiff to proceed without counsel. (Cf. Evid. Code, § 1152

19

[barring consideration of settlement negotiations to prove liability or damages].) Plaintiff's argument that the court did so is based on nothing but speculation.[3]

Fourth, plaintiff argues that the trial court erred in permitting Rodriguez to withdraw because he failed to provide her with a summary of motion in limine rulings, with the status of witness subpoenas, or with her full case file. These alleged deficiencies occurred *after* the court's ruling, and cannot retroactively invalidate it.

Fifth and finally, plaintiff asserts that it was unfair for the trial court to deny her a trial continuance when the court had approved certain days off from the trial for Rodriguez and defendants' counsel. This is a false equivalency. Rodriguez ultimately did not need the day off he previously requested, and defense counsel's day off was preapproved before the trial even began. Plaintiff, on the other hand, requested a delay midtrial when the jury was time-committed to a specific end date.

## C. *Even assuming error, it was not prejudicial*

Even if the trial court abused its discretion in allowing Rodriguez to withdraw as counsel without granting plaintiff a continuance, that error did not prejudice plaintiff. In assessing prejudice, we ask "whether the lack of representation affected the result." (*Marriage of Tara, supra*, 99 Cal.App.5th at pp. 887-888; *In re Malcolm D.* (1996) 42 Cal.App.4th 904, 921 (*Malcolm D.*).)

---

**3** Plaintiff's related assertion that the record raises "serious questions about [the trial court's] impartiality" is equally speculative, as it seems to rest on nothing more than plaintiff's disagreement with the court's rulings, which does not constitute bias. (See *Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674; Code Civ. Proc., §§ 170, 170.1, subd. (a), 170.2, subd. (b).)

20

As a threshold matter, plaintiff asserts that this error is per se reversible without any need to show prejudice because the order allowing Rodriguez to withdraw but denying her a continuance was (1) in excess of the trial court's jurisdiction, and (2) a violation of due process. Plaintiff is wrong. Acts in excess of jurisdiction are not all automatically reversible (*Lee*, *supra*, 168 Cal.App.4th at pp. 564-565), and the cases plaintiff cites are all distinguishable. (Cf. *In re Marriage of Kent* (2019) 35 Cal.App.5th 487, 495-496 [trial court exceeded statutory mandate by ignoring a "clear restriction or limitation on [its] power to act" by ruling on a custody matter despite ongoing, out-of-state litigation on the same matter]; *County of Los Angeles v. Williamsburg National Ins. Co.* (2015) 235 Cal.App.4th 944, 953-955 [trial court exceeded statutory mandate by refusing to hold a hearing despite a mandate to do so].) There is also no due process violation absent a showing that the denial of a continuance actually prejudiced plaintiff; prejudice is an *element* of this type of due process analysis, not a way to leapfrog over the prejudice inquiry. (*Marriage of Tara*, *supra*, 99 Cal.App.5th at pp. 887-888; *Walker v. State Bar* (1989) 49 Cal.3d 1107, 1116 ["no due process right to counsel in civil cases"].)

Plaintiff has not carried her burden of showing that having Rodriguez or any other counsel represent her for the remainder of the second phase of trial was reasonably likely to have altered the outcome. (*Malcolm D.*, *supra*, 42 Cal.App.4th at p. 921.) Plaintiff subpoenaed witnesses, conducted (both direct and cross-) examinations of witnesses, argued evidentiary issues, defended against motions, and made a closing argument. Although the jury did not award her any damages, plaintiff prevailed on her breach of fiduciary duty claim against the Association. Notably,

21

plaintiff does not claim there was insufficient evidence to support the jury's verdict. On this record, plaintiff has not shown that the absence of counsel and the denial of a continuance made a determinative difference or rendered the trial fundamentally unfair. (*Malcolm D.*, *supra*, 42 Cal.App.4th at p. 921.)

In arguing she was prejudiced, plaintiff lists seven ways in which being self-represented differed from what counsel might have done in representing her during the remainder of the trial.[4] However, plaintiff at no point goes on to explain how the assistance of counsel would have altered the substantive *outcome* of the case. (*Marriage of Tara*, *supra*, 99 Cal.App.5th at p. 888.)

## II. Defense Counsel Misconduct

### A. *Pertinent facts and procedural background*

1. *Defendants disclose during postverdict hearing on plaintiff's equitable claims that "Microsoft Money" records are inaccessible*

As noted above, after the jury rendered a verdict for defendants in the second phase of the trial, the parties debated whether plaintiff was entitled to a bench trial on her equitable claims for injunctive relief, declaratory relief, and an accounting. According to plaintiff, she was entitled to pursue her equitable

---

4   Namely, plaintiff points out that she (1) was up against three defendants represented by a total of five attorneys; (2) had to serve as counsel and witness simultaneously; (3) had difficulty understanding certain legal principles and procedures like presenting evidence of damages and adhering to motion in limine rulings; (4) was incapable of making certain arguments to the trial court that counsel would have, such as about jury instructions; (5) was unprepared to defend against attacks on her credibility; (6) did not have full access to her case file; and (7) had a medical condition that was aggravated by the stress of the trial.

claims notwithstanding the jury's verdict because she was still challenging the "retaliatory and unfounded" dues, assessments, and fines that the Association had levied against her. At the postverdict hearing on this issue, plaintiff argued that before a trial could be held on her equitable claims, defendants were obligated to produce the "Microsoft Money" records that Wortman testified to maintaining as treasurer of the Association. Neither plaintiff nor any of her prior counsel had requested such financial records during pretrial discovery and had never deposed Wortman. Defendants responded that (1) the foreclosure settlement "subsumed" plaintiff's equitable claims challenging the dues, assessments, and fines;[5] and (2) "Microsoft Money" was a "legacy software" that was "no longer technically supported," so even if plaintiff had the records, "there's just . . . nothing that could [access] them."

As noted above, the trial court denied plaintiff a bench trial on her equitable claims and dismissed those claims as "moot" because they were "necessarily determined"—and rejected—"in the jury trial."

2.      *Plaintiff seeks new trial based on inaccessibility of "Microsoft Money" records*

Seizing on defendants' postverdict disclosure that the "Microsoft Money" records were inaccessible, plaintiff argued in her new trial motion that defendants had lied to the jury when representing that plaintiff owed nearly $60,000 to the Association (because defendants did not have the software to back up that representation). The trial court rejected this argument as "speculative and unproven." The court further explained that

_____

5      At this time, plaintiff was $70,000 in arrears in post-foreclosure settlement debt owed to the Association.

23

plaintiff "had every opportunity to investigate each amount the [Association] asserted was owed" and that it would not "go behind" the foreclosure settlement and the parties' "decisions to reach" that agreement "at the time they did and on the terms they reached."

**B.** *Pertinent law*

A party is entitled to a new trial if, as pertinent here, there was an "[i]rregularity in the proceedings" before the jury. (Code Civ. Proc., § 657, subd. (1).) Attorney misconduct can amount to an irregularity and thus can be a ground for a new trial. (*Garcia v. ConMed Corp.* (2012) 204 Cal.App.4th 144, 148, *McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 303.) It is misconduct for an attorney to suggest or imply facts not in evidence or to refer to evidence the trial court excluded. (*Jackson v. Park* (2021) 66 Cal.App.5th 1196, 1214, 1216.) We review an order denying a new trial for an abuse of discretion; as part of that task, we must independently assess whether any error was "prejudicial." (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871-872; *Jackson*, at pp. 1213, 1216.) That is, it must be "reasonably probable" that the party asserting attorney misconduct ""'would have achieved a more favorable result in the absence"'" of the challenged misconduct. (*Jackson*, at p. 1216; *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1411.)

**C.** *Analysis*

We conclude that the trial court did not err in denying plaintiff a new trial based on attorney misconduct.

There was no misconduct. At trial, Wortman and Bennett testified that plaintiff owed nearly $60,000 to the Association and that her refusal to pay that outstanding debt had jeopardized the Association's solvency. Their testimony is sufficient by itself to

24

establish those facts (Evid. Code, § 411); defense counsel's failure to offer corroborative evidence from the "Microsoft Money" records does not render the otherwise sufficient testimony somehow false.  Moreover, at no point did defense counsel elicit or present any false evidence regarding the accessibility—or, frankly, even the *existence*—of data stored in the "Microsoft Money" software; the debt plaintiff owed to the Association came up during *plaintiff's* cross-examination of the witnesses.  (*De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates* (2001) 94 Cal.App.4th 890, 908 ["The doctrine of invited error applies . . . 'when a party by its own conduct induces the commission of error'"].)  At bottom, plaintiff's attack on the accessibility of the data through the "Microsoft Money" software is an impermissible collateral attack on the foreclosure settlement because she is asserting that, without the software data, she owes *nothing* (notwithstanding the settlement's terms to the contrary).  (See *Madrigal v. Hyundai Motor America* (2023) 90 Cal.App.5th 385, 402-403 [parties' use of Code of Civil Procedure section 664.6 to memorialize settlement renders settlement the "functional equivalent" of a "final, formal judgment"]; *Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065-1066 [settlement incorporated into judgment was final judgment for res judicata purposes].)

Even if we assume that defendants' counsel engaged in misconduct, that misconduct was not prejudicial.  That is because the handful of references at trial to the amount plaintiff originally owed the Association had no bearing on the success (or lack thereof) of plaintiff's claims.  Plaintiff's claims failed for entirely different reasons—namely, because the evidence

established (and plaintiff does not dispute) that (1) she never complained of any water damage to her condo, so the Association was not liable for fixing a problem of which it had no knowledge; (2) Wortman and Bennett owed fiduciary duties to the Association, not to the individual owners; and (3) any misappropriation by Wortman would have given rise to a derivative action, not to an individual action by plaintiff. Plaintiff's foreclosure settlement with the Association was not at issue at trial.

Plaintiff responds with what boils down to two categories of arguments.

First, she denies that she is collaterally attacking the foreclosure settlement because, in her view, her waiver of claims in that agreement did not extend to the *fines* issued by the Association. This is a blatant misreading of the settlement. The settlement states that plaintiff waives her claims related to "Assessments owed through an[d] including August 2017," and defines "Assessments" as "the assessments, *fines*, late charges and interest" assessed against plaintiff (italics added). Plaintiff points to the testimony of an expert at trial that the industry meaning of "assessment" does *not* include fines for violations of the CC&Rs, but this testimony cannot contradict the plain terms of the agreement. (*Cal. Lettuce Growers v. Union, Inc. Sugar Co.* (1955) 45 Cal.2d 474, 482 [industry standards cannot "'alter or vary the terms of [a] contract'"].)

Second, plaintiff argues that defendants' unsupported assertion at trial that she had owed the Association nearly $60,000 was prejudicial because it "cast her in a negative light" and "diminish[ed] her credibility." We reject the invitation to reweigh the jury's credibility determination, especially when

26

there was other overwhelming evidence at trial impeaching plaintiff's credibility.  (*Caden C.*, *supra*, 11 Cal.5th at p. 640 [reviewing court may not "'evaluate the credibility of witnesses'"].)

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ